IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA      :
                                    :
     vs.                                : DOCKET NO. 17-CR-502
                                    :
MICHAEL SHORE                   :

_____

TO THE HONORABLE TIMOTHY J. SAVAGE, JUDGE OF THE SAID COURT:

**<u>DEFENDANT'S SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR DEPARTURE FROM
SENTENCING GUIDELINES AND MANDATORY SENTENCE</u>**

On June 4, 2018, the above named Defendant filed with this Court a Motion to Bar Application of Mandatory Sentence. The Court conducted an evidentiary hearing on July 31, 2018 at which time testimony was presented from two expert witnesses, Dr. Elliot Atkins for the Defense and Dr. Shawn Channel for the Government. The following is a discussion of the issues raised at that hearing.

**<u>DEFENSE WITNESS</u>**

The testimony of Dr. Atkins established that the Defendant suffered from Autism Spectrum Disorder as a result of which the Defendant had developed an obsessive nature with lack of empathy for others, leaving him with an inability to connect socially and the compulsion to engage in role playing fantasy.

1

Dr. Atkins testified that he had spent approximately eight hours at the Federal Detention Center with Michael Shore. Dr. Atkins, whose testimony was accepted by this Court as an expert in the field of forensic psychology (N.T. 7/31/18, 5), testified that the Defendant, as a result of ASD, suffers from an inability to relate to other people in an age appropriate manner along with a substantial deficit of empathy in that he was not able to appreciate what another person was experiencing in relation to his own behavior (N.T. 7/31/18, 7-8).

As a result of these mental health issues, the Defendant was not able to make friends, especially with girls; accordingly, he came to believe that there was a way that younger females might be able to accept him despite his shortcomings (N.T. 7/31/18, 9). Accordingly, he began to interact through fantasy roles, such as going to comic conventions with his father, wearing elaborate costumes. In that way, he could interact with young people without fearing rejection. In a similar way, the Defendant began to interact with young females on the internet (N.T. 7/31/18, 11).

According to Dr. Atkins, the Defendant's sexual interest was in girls that were primarily post pubescent, from the ages of 12 to 17 (N.T. 7/31/18, 9, 14). Dr. Atkins testified that his associate, Dr. Thomas Hayworth, gave Michael Shore the Abel test which was designed to determine if the Defendant is a sexual pedophile. According to that test, the Defendant is not a pedophile because it revealed that

2

Michael Shore does not have a sexual interest in prepubescents (N.T. 7/31/18, 14, 34).

Dr. Atkins opined that Michael Shore is not a sociopath, as that is a person that does not care how his victims feel; rather, the Defendant does care but he does not understand that his conduct could be harming other people.

In view of the Defendant's plea of guilty, his interviews with Dr. Atkins, Dr. Channel and Leslie Maxwell, Probation Officer, Dr. Atkins concluded that the Defendant has accepted responsibility because he is finally starting to appreciate how the victims in this case were harmed. Dr. Atkins testified that the Defendant needs sex offender treatment to enhance his ability to empathize with others, and that, once such a program is completed, the Defendant should not be expected to reoffend (N.T. 7/31/18, 20-21, 37).

Dr. Atkins noted that the Defendant's conduct in this case was not done for the purpose of obtaining financial reward or so that he could distribute child pornographic material to other people in the internet (N.T. 7/31/18, 13); rather, the Defendant's compulsive personality makes him engage in obsessive behavior to follow through on whatever task he may be fixated upon, like collecting zippers from women's purses as a youth or (more recently) engaging in the collection of child pornography (N.T. 7/31/18, 45).

While the Defendant showed that he was capable of being manipulative in order to obtain his goals (to get the girls to like him and to send him their pictures), the Defendant's efforts in this regard were not sophisticated and were quite juvenile in their manner (N.T. 7/31/18, 10-11). For example, the Defendant would often admit to his own identity, true age and residence.

Michael Shore is presently incarcerated in Unit 7 South at the Federal Detention Center, which is a psychiatric unit, and he is not in the general population of the prison. However, since being in prison, life has been a great struggle for Michael Shore. The Defendant has a tremendous dependency on his family which, as a result of separation due to incarceration, has led to the Defendant engaging in self-injurious behaviors, like picking his skin and nails, burying his head and having panic attacks (N.T. 7/31/18, 16).

Because the Defendant is not able to satisfactorily relate to other inmates due to his ASD issues, it is likely that he will be victimized due to his lack of ability to understand social cues. It is important to note that Dr. Atkins believes that continued incarceration of the Defendant may actually result in causing him to regress psychologically (N.T. 7/31/18, 17).

Finally, Dr. Atkins testified that with regard with recidivism, that risk is lower for Defendants in child pornography cases than in other sexual offense cases

4

(under 8% in cases without contact and under 12% for cases with contact) (N.T. 7/31/18, 18-19). If the Defendant is given the opportunity to successfully complete a sexual offender treatment program in prison, the Defendant should not be expected to reoffend. Such programs may take 18 to 24 months to complete (N.T. 7/31/18, 20-21).

**<u>GOVERNMENT'S WITNESS</u>**

Dr. Shawn Channel testified that he is a forensic psychologist at FMC Devens, employed by the Bureau of Prisons. The Defendant was housed at FMCD from December 21, 2017 to February 26, 2018.

Upon arrival at FMCD, the Defendant promptly had problems with other inmates. He was then moved from an open unit to a semi-locked down unit; subsequently, he was allowed to return to an open unit (N.T. 7/31/18, 51). The Defendant reported that he was sexually propositioned by another inmate only seven days after arrival. The day after that, the Defendant reported that he had been harassed by other inmates.

Dr. Channel testified that on one occasion, he found the Defendant in his cell, hiding under a sink, shaking and crying over fear he might have to share the cell with a roommate. Dr. Channel agreed that the Defendant was in such a state that he needed to be housed by himself (N.T. 7/31/18, 76-78).

While at FMCD, the Defendant suffered from various emotional difficulties, including nightmares, daily anxiety attacks, sleep disruption and medically related issues such as hypertension, migraine headaches and lack of appetite (N.T. 7/31/2018, 77, 81). Because the Defendant was "scared" at FMCD, he would rarely leave his cell (N.T. 7/31/18, 78).

The Defendant continued to pick his skin and bite his nails, something he had been doing since his youth, as a result of increased anxiety (N.T. 7/31/18, 84). Dr. Channel testified that he refrained from placing Mr. Shore in a restricted housing unit because he knew how difficult that would be for the Defendant to deal with (N.T. 7/31/18, 80).

Dr. Channel conceded that an ASD inmate like Michael Shore could be readily exploited, abused or blackmailed by other inmates as a result of his impaired social skills (N.T. 7/31/18, 95). Unfortunately, there are no specific programs within the Bureau of Prisons system to treat inmates with Autism Spectrum Disorder (N.T. 7/31/2018, 100). Furthermore, if the Defendant has to be transferred from time to time to a restricted housing unit for punishment or for his own safety, it is possible he will get no treatment at all (N.T. 7/31/18, 108).

Dr. Channel administered three tests to the Defendant at FMCD. The results were that the Defendant has an average intelligence quotient, that he suffers from a

major depressive disorder and that he is in the spectrum for ASD with "poor social skills" and a lack of empathy (N.T. 7/31/18, 52). 1

Contrary to Dr. Atkins, Dr. Channel testified that, in his opinion, the Defendant suffers from pedophilia and that he is sexually attracted to prepubescent children, a fact which the Defendant has denied (N.T. 7/31/18, 54).2 Dr. Channel bases this conclusion upon the fact that the Defendant had an extensive child pornography collection and that on one occasion when he was in contact with one of the juvenile female victims in this case, he said that "he would like to have sexual interactions with her nine year old sister"(N.T. 7/31/18, 55). 3 The Doctor also relied upon the fact that the Defendant had "a contact offense with a prepubescent individual" (N.T. 7/31/18, 36) (apparently referring to the Defendant having allegedly groped his younger sister).4

---

1 Dr. Channel conceded that he has not given the Defendant the Abel test that was given to the Defendant by Dr. Thomas Hayworth, nor has he had an opportunity to assess that test (N.T. 7/31/18, 87). The Hayworth report was subsequently provided to Dr. Channel by counsel for the Defendant.
2 Note that all of the complainants in the Indictment in this case are post-pubescent females (N.T. 7/31/18, 86).
3 A fair and objective review of the facts of the charged conduct attributed to the Defendant in this case shows that the Defendant did not ask for an opportunity for him to have sexual interaction with that complainant's nine year old sister. Furthermore, the Defendant's sexual relationship with the juvenile female from Florida was also not with a "prepubescent individual".
4 Dr. Channel reported that the Defendant had actually been engaged for a limited time to an adult woman who lived in the Defendant's home (and who eventually was evicted because she

With regard to recidivism, Dr. Channel testified that the Defendant's lack of empathy and remorse increased the risk of recidivism, noting that the Defendant is "emotionally unstable" and thus deviant behavior is a way for him to cope with and relieve stress (N.T. 7/31/18, 71). However, Dr. Channel also testified that his testing revealed that the Defendant has an "average" risk of reoffending, which means that the Defendant should be provided treatment in order to decrease that risk (N.T. 7/31/18, 94). If such treatment is successfully completed, Dr. Channel testified that this would result in a reduced risk of recidivism (N.T. 7/31/18, 93). Dr. Channel testified that FMCD has a sex offender treatment program which takes 16 to 18 months to complete but it is not normally made available to an inmate until near the end of his sentence. The Defendant appears to be eligible for such a program (N.T. 7/31/18, 92, 104).

Dr. Channel testified that at some point the Defendant must accept responsibility for having a sexual attraction to children and that, without such an admission, his treatment would not be likely to succeed (N.T. 7/31/18, 112-114). Once released from confinement, the Defendant should be carefully supervised in that he must be restricted from contact with juvenile females and from internet access. If the Defendant should be released in the near future, he can be placed in a

---

was stealing from the family) (N.T. 7/31/18, 86).

residential facility (N.T. 7/31/18, 114-115).

Dr. Channel refused to agree with Dr. Atkins that the Defendant's behavior was consistent with ASD to the extent that the Defendant engaged in what Dr. Atkins viewed as predatory manipulation (N.T. 7/31/18, 59). Dr. Channel noted that the Defendant admitted that he would lie "to get what I want", citing the example where the Defendant told the mother of one victim that he was just trying to help her in their Facebook chats yet, once having been told to stay away by the mother, the Defendant promptly resumed sexual conversations with that complainant (N.T. 7/31/18, 59).

Dr. Channel seemed to be influenced by the Defendant's having engaged in "impersonation" in that he would portray himself as a young female in order to have internet contact with girls of that age, and thereby be more likely to establish a connection that the Defendant could then exploit (N.T. 7/31/189, 60). According to the doctor, this shows how the Defendant could "manipulate" others to accomplish his goals, which would be inconsistent with ASD behavior (N.T. 7/31/18, 64).

## **CONCLUSION**

The Defendant respectfully submits that the totality of the evidence submitted to the Court on July 31, 2018 establishes that Michael Shore should not receive a mandatory minimum sentence of 15 years imprisonment because that would

constitute a violation of his constitutional right to be free from cruel and unusual punishments under the Eighth Amendment.

The defense submits that Michael Shore is neither a predator nor a pedophile; rather, he suffers from a mental illness which interferes with his ability to connect socially with others, leaving him as an extremely vulnerable person while incarcerated. A long jail sentence will result in a deterioration of the Defendant's mental health, whereas a relatively short sentence with treatment will meet sentencing goals and provide the Defendant prompt mental health attention that can reduce the likelihood of recidivism by improving the Defendant's ability to empathize with others and teaching him to control his compulsive/obsessive nature.

Therefore, a sentence of 15 years without parole for this particular Defendant would be grossly disproportionate to the offender and the offense.

              Respectfully submitted:

              BAR 2021
              BURTON A. ROSE, ESQUIRE
              Attorney for Defendant

DATED: November 10, 2018

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA :
:
vs. : DOCKET NO. 17-CR-502
:
MICHAEL SHORE :

_____

**CERTIFICATE OF SERVICE**

COMES NOW, Burton A. Rose, Esquire, Attorney for the Defendant Michael Shore, in the above captioned matter, and hereby respectfully certifies that a true and correct copy of the attached DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR DEPARTURE FROM SENTENCING GUIDELINES AND MANDATORY SENTENCE has been electronically forwarded by the Court's Electronic Case Filing System and First Class Mail to:

        Michelle Rotella, Esquire
        Assistant United States Attorney
        615 Chestnut Street, Suite 1250
        Philadelphia, PA 19106-4476

        Respectfully submitted:

        BAR 2021
        BURTON A. ROSE, ESQUIRE
        Attorney for Defendant

DATED: November 10, 2018